**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

QUARK, INC.,

        Plaintiff-Counter-
        Defendant-Appellant.

v.

PHILIP A. HARLEY,

        Defendant-Counter-
        Claimant-Appellee.

No. 96-1046
No. 96-1048
No. 96-1061
(Dist. of Colorado)
(D.C. No. 93-Z-1997)

---

**ORDER AND JUDGMENT***

---

Before **ANDERSON**, **LUCERO**, and **MURPHY**, Circuit Judges.

---

    Quark, Inc., a Colorado corporation, brought this diversity action against its

former general counsel, Philip A. Harley, in the United States District Court for

the District of Colorado claiming breach of contract, fraud, civil conspiracy,

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

negligence,[1] misappropriation of trade secrets, and breach of fiduciary duty. Harley asserted counterclaims for abuse of process and indemnification. At trial, a jury found against Quark on all of its claims except breach of fiduciary duty; as to that particular claim, the jury found Harley liable but awarded Quark no damages. The jury found against Harley on his abuse of process counterclaim and the district court denied Harley's counterclaim and motion for indemnification and motion for attorney fees. This court exercises jurisdiction over Quark's appeal and Harley's cross-appeal pursuant to 28 U.S.C. § 1291 and **affirms**.

## I. BACKGROUND

In 1989 and 1990, Quark developed and released for sale a desktop publishing program named "QuarkXPress 3.0" (hereinafter "Xpress" or "QuarkXPress"). In 1991, a California corporation known as Zeus, Inc. ("Zeus") filed suit against Quark for copyright infringement, claiming that XPress copied Zeus' own desktop publishing program called "Zeus" ("the Zeus program"). In 1993, Quark settled with Zeus, paying it $1,750,000.

During the period in which Xpress was developed, Harley served Quark in various capacities, including director, executive vice president, trustee, and in-house general counsel. Harley resigned as a Quark employee in July 1989, and as

---

[1]Quark withdrew the negligence claim prior to trial.

a Quark director and trustee in April 1990. During his time of employment at Quark and while he was acting as in-house counsel, Harley became aware that Quark possessed a copy of the Zeus program. After leaving Quark, Harley moved to California, where he was contacted by Zeus' attorneys. Harley told the Zeus attorneys that Quark possessed a copy of the Zeus program. Following settlement of the Zeus suit, Quark initiated this suit against Harley. Quark claimed the Zeus suit was caused by Harley's communications to the Zeus attorneys and sought to hold Harley responsible for all litigation expenses, attorneys fees, and settlement sums.

Harley moved for summary judgment, arguing, *inter alia*, that Quark's claims were barred because Harley's communications to the Zeus attorneys were protected by California's litigation privilege. The district court denied Harley's motion.

The district court allowed Harley to discover and then received into evidence information generated by Quark's attorneys during the Zeus case, over Quark's argument that the information was protected by both the work product doctrine and the attorney-client privilege. The district court excluded as prejudicial Quark's evidence that Harley was involved in a homosexual relationship with Michael Miller, a former Quark employee who was involved with Zeus in its lawsuit against Quark. The district court did receive evidence

that Miller was Harley's "close friend."  The court refused to allow Quark to read into the trial record certain portions of a 1994 deposition of Zeus attorney Daniel Kaufman which was taken by Quark in the instant case.  The excluded portions were quotations from a 1992 deposition of Kaufman taken by Quark in the Zeus case and used in the questioning of Kaufman in the 1994 deposition for the case at bar.

Prior to submitting the case to the jury, Harley moved for judgment as a matter of law, arguing, *inter alia*, that Quark's claims were barred by the Noerr-Pennington doctrine and that Quark failed to establish the elements of breach of fiduciary duty.  The district court rejected these arguments and denied the motions.

## II.  ANALYSIS

### A.    Quark's Issues on Appeal

*1.    Admission of information generated by Quark attorneys in the Zeus case*

This court reviews the district court's "determinations regarding waiver of attorney-client privilege and work product protection for abuse of discretion." *Frontier Ref. Inc. v. Gorman-Rupp Co.*, No. 96-8014, 1998 WL 58837, at \*2 (10th Cir. Feb. 13, 1998).  An abuse of discretion is defined as "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'"  *United States v.*

*Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) (quoting *United States v. Cardenes*, 864 F.2d 1528, 1530 (10th Cir. 1989)).  Under this standard,

> a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. . . . [W]e defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value.

*Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)) (internal quotation omitted).

At issue are interview notes and memoranda prepared in connection with Quark attorneys' interviews of Quark employees in the Zeus case, as well as the trial testimony of Quark attorneys regarding these materials. Quark claims the notes and memoranda are neither discoverable nor admissible because they are protected by both the attorney-client privilege and the attorney work product doctrine. Quark also argues the notes, memoranda, and testimony are not admissible because they contain hearsay and are excludable under Federal Rule of Evidence 403 as misleading and confusing.

The district court concluded Harley could discover the notes and memoranda and admitted the materials at trial on the following three grounds: (1) Quark waived the attorney-client privilege and the protections of the work product doctrine when it selectively disclosed a portion of the materials and allowed Harley access to the Zeus file "without restrictions"; (2) Quark placed the information at issue by filing its complaint against Harley; and (3) the work product doctrine did not apply because the Zeus litigation had terminated.

Because the district court's ruling can be affirmed on the first ground identified above, this court need not reach the alternate rationale employed by the district court.

The district court ruled that Quark waived the attorney-client privilege and the protections of the work product doctrine, holding as follows:

> [Quark has] waived the attorney/client privilege. Clearly the issues before the court are going to involve the Zeus versus Quark case, and the reasons that it settled . . . .
> . . . .
> . . . [Quark has] made this an issue in this case, but furthermore, . . . *by providing [Harley] information that [is] in pieces, settlement discussions and the confidential statement, [Quark has] waived the privilege . . . .*
> . . . .
> . . . [Quark's] whole case is involving the Zeus case, *and [Quark] waived it, [Quark has] already provided [Harley] information from that file, without restrictions. And as such [Quark] waived it.*

Aplt. App. at 45, 47 (emphasis added). The district court's ruling that the attorney-client and work product protections are waived by selective disclosure comports with the law of this circuit. *See Frontier*, 1998 WL 58837, at *8 ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.").

On appeal, Quark addresses the magistrate court's selective disclosure rationale for waiver only with extremely brief, conclusory statements that the

items selectively disclosed were not privileged or work product. Quark fails to cite to any record copies of the documents it identifies in this diminutive treatment. It does not quote from or describe the content of these documents. Quark has thus failed to provide the record necessary for appellate review of the district court's justification for allowing Harley to discover and admit the information, and the ruling must, therefore, stand. Furthermore, Quark fails to adequately address the district court's finding that Quark had previously allowed Harley unrestricted access to the Zeus litigation file. This unchallenged finding, standing alone, is sufficient to support the district court's conclusion that Quark had waived the attorney-client privilege and the protections of the work product doctrine.

Quark also argues the attorney notes and memoranda should have been excluded by the district court as impermissible hearsay. The basic problem with Quark's argument is that it completely fails to address the district court's conclusion that the materials at issue are non-hearsay admissions by a party opponent. *See* Fed. R. Evid. 801(d)(2)(D) (providing that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship"). Based on the record before this court, the district court made all of the necessary findings to conclude that the materials

at issue were non-hearsay statements pursuant to Rule 801(d)(2)(D), including the following: (1) the notes and memoranda contained declarations of Quark employees; (2) the statements were made while the employment relationship continued; and (3) the statements related to matters within the scope of the employment relationship. Because Quark fails to adequately contest the correctness of these findings, the district court's decision to admit the statements as non-hearsay does not constitute a clear abuse of discretion. *See Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368 (10th Cir. 1996) ("It is well established that the admission or exclusion of evidence lies within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion.").

Finally, Quark asserts the notes and memoranda should have been excluded under Rule 403 as misleading and confusing. We conclude this argument is unavailing. The evidence supports Harley's assertions that Quark's own actions caused its damages in the Zeus suit, rather than the statements Harley made to Zeus attorneys. The evidence further suggests that Quark employees knowingly used the Zeus program in the development of Xpress and that individuals inside and outside of Quark were aware of and concerned about the similarities between the features of Xpress and the Zeus program. The evidence Quark argues ought to have been excluded was thus probative of the question of who bore responsibility for Quark's alleged damages in the Zeus suit, Quark itself or

Harley.  *Cf. United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991) (noting evidence not excludable under Rule 403 merely because damaging to opponent's case).

2.    *Exclusion of homosexual relationship evidence*

Federal Rules of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  The district court in this case provided each party full opportunity to argue the admissibility of Miller and Harley's homosexual relationship, then concluded that sexual preference "may be a big deal to the jury and I don't want to have that prejudice."  The court did allow the litigants to describe Miller and Harley's relationship with words such as "close" or "other synonyms."  This ruling was not a clear abuse of discretion, as it was not arbitrary, capricious, whimsical, or manifestly unreasonable.  *See Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 939 (10th Cir. 1994) (noting reversal of exclusion of evidence under Rule 403 is appropriate only when clear abuse of discretion); *Hernandez-Herrera*, 952 F.2d at 343 (defining abuse of discretion).

3.    *Exclusion of the 1992 Kaufman deposition*

Quark sought to read into the trial record a 1994 deposition of Zeus attorney Daniel Kaufman taken by Quark in the instant case; this 1994 deposition

included quotations from a 1992 Kaufman deposition taken by Quark in the Zeus case. Federal Rules of Civil Procedure 32(a) provides under certain circumstances applicable here that "a deposition . . . may be used [at trial] against any party who was present or represented at the taking of the deposition." In accordance with Rule 32(a), Quark was allowed to read into the record the text of the 1994 Kaufman deposition taken in this case, at which Harley was represented, except for those portions of the 1994 deposition which were verbatim quotations from the 1992 Kaufman deposition taken in the Zeus case, at which Harley was not represented.

Quark argues it should have been able to read the 1992 deposition excerpts into the record because they were used as inconsistent statements under Federal Rule of Evidence 801(d)(1) to impeach Kaufman in the 1994 deposition. A close reading of the record reveals that the district court excluded those portions of the 1994 deposition that were simply verbatim quotations of the 1992 deposition on two grounds: (1) Quark was not really using the 1992 deposition to impeach Kaufman but was instead trying to skirt around Rule 32(a) and get the 1992 deposition admitted by reading it into the 1994 deposition and (2) Quark had not established a proper foundation for using the 1992 deposition to impeach

Kaufman.[2]  Upon review of the record, and with due deference to the trial court's

role as the proper gatekeeper of evidentiary admission, this court concludes that

the district court did not commit a clear abuse of discretion in ruling that Quark

failed to provide an adequate foundation for use of the 1992 deposition to

impeach Kaufman and that Quark was trying to sidestep the requirements of Rule

32(a).  In particular, there is nothing in this appellate record to indicate that the

district court was provided anything other than the representations of Quark's

counsel that the 1992 transcript was, in fact, the deposition of Kaufman.  *See*

---

[2]The district court engaged in the following colloquy with counsel for Quark:

> The Court: Well, it's unfortunate.  If you had had him read it to himself and then indicate whether he remembered this -- you see, here's the problem: We cannot read to the jury the '92 deposition.  Harley wasn't there, and I can't let you do this by indirection.  And I know you want to impeach, but it's just getting around the rule that the client must be represented.
>
> . . . .
>
> Mr. Lamb: Your Honor, just for the record, we would say that is proper impeachment.  Had he been here in this courtroom, I could impeach him with that '92 deposition.  And as the court stated, the reading of the deposition is the same as a live witness, and this is proper impeachment.
>
> The Court: Here's my problem: Look on page 70: "Was that your testimony on June 29, [1992]?"
>
> > And he says, "I assume it is."
> >
> > Well, I can't assume and I can't let the jury assume.
>
> Mr. Lamb: If you will read the remainder of that, though, I asked him if he believed it was inaccurately transcribed; and he said he had no reason to believe that it was not accurate . . . .
>
> The Court: Your objection is on the record.

-12-

*supra* note 2 (quoting colloquy between district court and Quark's counsel on the issue of whether the transcript provided to Kaufman at the 1994 deposition was an accurate copy of Kaufman's 1992 deposition). The district court had nothing more than these representations and the stated assumptions of Kaufman, which assumptions were also based on the representations of Quark's counsel.

Even if this court were to conclude that the district court committed a clear abuse of discretion in excluding those portions of the 1994 deposition that were simply verbatim quotations of the 1992 deposition, we would further conclude that the error was harmless. As noted more fully below, the jury concluded that Quark had proven its case and found that Harley had breached his fiduciary duty to Quark. Nevertheless, the jury refused to award Quark any damages, apparently concluding that Quark had failed to mitigate its damages. Because none of the materials in question bear on the issues of mitigation or damages, the exclusion of those materials had no effect on the jury's verdict. The exclusion of the materials from the 1992 deposition did not affect Quark's substantial rights and Quark is therefore not entitled to a reversal on the grounds that the materials were excluded. *See* Fed. R. Evid. 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .").

*4. Inconsistent verdict*

Quark argues the jury verdict was inconsistent, in that it found Harley to have breached his fiduciary duty to Quark but failed to award Quark any damages. We must first consider whether Quark waived this issue by not objecting before discharge of the jury. In *Resolution Trust Corp. v. Stone*, this court held that "when the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue." 998 F.2d 1534, 1545 (10th Cir. 1993) (citing *Bonin v. Tour W., Inc.,* 896 F.2d 1260, 1263 (10th Cir. 1990) ("[Federal Rule of Civil Procedure] 49(a) does not require a party to object to the inconsistencies in a jury's answers to a special verdict before the jury is discharged in order to preserve his right to challenge the inconsistencies in a subsequent motion or on appeal.")). As this case utilized a special verdict form, Quark was not required to raise the inconsistency issue prior to discharge of the jury in order to preserve its right to challenge the alleged inconsistency on appeal.

This court must harmonize a jury verdict whenever possible. *See Harvey ex rel. Harvey v. General Motors Corp.*, 873 F.2d 1343, 1347-48 (10th Cir. 1989). As a consequence, we consider the jury's finding of breach of fiduciary duty and its failure to award damages in light of Jury Instruction No. 38, which states:

> If you find in favor of plaintiff, Quark, Inc., on . . . its claim[]
> for . . . breach of fiduciary duty . . . and that plaintiff is entitled to

-14-

actual damages, then you must consider whether the affirmative defense of plaintiff's failure to mitigate or minimize damages has been proved. One claiming damages for losses has the duty to take reasonable steps as are reasonable under the circumstances to mitigate or minimize those damages. Any damages resulting from a failure to take such reasonable steps cannot be awarded.

Aplt. App. at 404. We harmonize the purported inconsistent jury findings by hypothesizing that while the jury found breach of fiduciary duty and consequent damages, it also found a corresponding failure to mitigate those damages. This process of harmonizing eliminates any perceived inconsistency between the jury's finding of a breach of fiduciary duty and its failure to award damages. The jury verdict is thus not inconsistent.

### B.     Harley's Issues on Cross-Appeal

*1.     Indemnification*

Harley claims that he is entitled to indemnification from Quark pursuant to Colorado statutory law and Quark's Bylaws, both of which require a corporation to indemnify a former director against reasonable expenses incurred in defending a lawsuit. *See* Colo. Rev. Stat. § 7-109-103. The cited statutory provision and Bylaws, however, mandate indemnification only when the director was "wholly successful on the merits or otherwise" in that defense. *See id.* Harley was not wholly successful in this action, as he was found liable for breaching his fiduciary duty to Quark. Furthermore, despite Harley's unsupported  protestations to the contrary, the mere fact that the jury refused to award Quark damages does not

-15-

negate the jury's finding that Harley breached his fiduciary duty to Quark. *Cf. Dennis I. Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 329-31 (Colo. 1994) (en banc) (concluding that liability not damages controls the award of attorney fees under contractual fee shifting provisions). Harley's cross-appeal of the jury's verdict that he breached his fiduciary duty plainly belies his argument that he was wholly successful below. Accordingly, Colorado law does not mandate indemnification in this case.

2.      *The Noerr-Pennington doctrine*

Harley argues the district court erred in denying his motion for judgment as a matter of law on Quark's tort claims. According to Harley, those tort claims are barred by the Noerr-Pennington doctrine because they arose from Quark's defense against meritorious litigation, namely the Zeus case.

The Noerr-Pennington doctrine provides immunity which protects parties who petition the government for anti-competitive policy changes from subsequent antitrust litigation brought by competitors. *See United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). Some courts have reasoned that this immunity, though originally arising out of the Supreme Court's interpretation of the Sherman Anti-Trust Act, is actually rooted in the First Amendment right to petition the government. *See, e.g.*, *Video Int'l Prod., Inc. v. Warner-Amez Cable*

*Communications, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) ("Although the *Noerr-Pennington* doctrine initially arose in the antitrust field, other circuits have expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws . . . .").

Assuming, without deciding, that this circuit would extend the doctrine beyond the realm of antitrust litigation, the doctrine does not immunize Harley from Quark's suit. Quark's alleged damages arise from the Zeus case. Zeus, however, not Harley, brought the Zeus case against Quark; it is thus to Zeus, not Harley, that Noerr-Pennington immunity would inure. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993) ("*Those who petition* government for redress are generally immune from antitrust liability." (emphasis added)).

3. *California's litigation privilege*

Harley argues the district court erred in denying Harley's motion for summary judgment on grounds that Quark's claims are barred as arising from communications protected by California's litigation privilege. California's litigation privilege effects tort immunity for statements required, or permitted by law, to be made in the course of judicial proceedings. *See* Cal Civ. Code § 47(2); *Moore v. Conliffe*, 871 P.2d 204, 207-08 (Cal. 1994) (in bank); *Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990) (in bank). The privilege covers a broad

scope of communications, including prelitigation communications with "some relation" to an anticipated lawsuit. *See Rubin v. Green*, 847 P.2d 1044, 1048 (Cal. 1993) (in bank); *ITT Telecom Prods. Corp. v. Dooley*, 262 Cal. Rptr. 773, 777 (Cal. Ct. App. 1989).

Assuming, without deciding, that California law applies in the instant case, a dubious proposition at best, the California litigation privilege does not apply to an action such as this, in which an attorney is sued by a former client for breach of fiduciary duty. As the California Court of Appeals observed in *Mattco Forge, Inc. v. Arthur Young & Co.*, 6 Cal. Rptr. 2d 781 (Cal. Ct. App. 1992), "[I]f [the litigation privilege] . . . protected an attorney from any suit by a former client, no malpractice suit could be brought."[3] *Id.* at 790. The *Mattco* court held that the litigation privilege did not bar suit against the plaintiff's own, hired servant for breach of fiduciary duty with regard to the prior case. *See id.* at 789-90 (holding that litigation privilege did not bar breach of fiduciary duty claim against one's

_____

[3]No difference significant to the applicability of the litigation privilege exists between a claim against a former attorney for malpractice and a claim against a former attorney for breach of fiduciary duty. Both arise out of the breach of duties owed by the attorney to the client as a result of its professional representation of the client. *See* 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 11.1, at 633 (3d ed. 1989) ("The [breach of fiduciary duty] constitutes a wrong which is distinct and independent from professional negligence but still [comprises] legal malpractice."); *Resolution Trust Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1532 (S.D. Fla. 1993) (holding particular breach of fiduciary duty claim was "at root, [a] malpractice claim[]").

own expert witnesses, and stating that "analogy between a party bringing a suit against its own expert witness and the party bringing a suit against its own attorney has some relevance"). The court explained that the policy underlying the litigation privilege was the protection of those who functioned adversely to the plaintiff in the prior suit, rather than those who functioned as servants to the plaintiff in the prior suit. *See id.* at 788-89. Harley thus is not entitled as a matter of law to immunity derived from the litigation privilege.

4. *Breach of fiduciary duty*

Harley argues the undisputed evidence establishes that any disclosures by Harley to Zeus attorneys occurred after he had severed all employment and corporate leadership relationships with Quark, and that Harley owed no continuing fiduciary duty to Quark following this severance. The resignation of an officer or director, however, does not free that person from his fiduciary obligation to maintain corporate confidences acquired during the prior fiduciary relationship. *See T.A. Pelsue Co. v. Grand Enter., Inc.*, 782 F. Supp. 1476, 1485-86 (D.C. Colo. 1991).

Harley also argues that he did not breach his fiduciary duty to Quark because the information he disclosed to Zeus attorneys was not confidential or privileged as a matter of law and because Quark failed to establish that any actions by Harley caused Quark's alleged damages. This argument fails to

acknowledge that the nature of the disclosed matters and the consequent damages are factual questions which the jury resolved against Harley. This court will not retry factual issues. The jury's evaluation of the evidence on confidentiality and causation, inherent in its breach of fiduciary duty verdict, is binding on appeal. *See Rock v. McCoy*, 763 F.2d 394, 396 (10th Cir. 1985).

## III. CONCLUSION

The judgment of the United States District Court for the District of Colorado is **affirmed**. Both the appeal and the cross-appeal fail in all respects.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge